UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

**DISH NETWORK L.L.C.,**
**ECHOSTAR TECHNOLOGIES L.L.C.,**
**and NAGRASTAR LLC,**

      Plaintiffs,

v.

**ALL THINGS DIGITAL, INC.**
**and ELLIOTT RIVERA,**

      Defendants.

_____/

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC (collectively, "DISH Network") bring this suit against Defendants All Things Digital, Inc. and Elliott Rivera (together, "Defendants") because they are trafficking in devices that are purposefully designed and used primarily for circumventing DISH Network's security system and stealing the copyrighted, subscription-based satellite television programming that is broadcast by DISH Network.

## PARTIES

1. Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

2. Plaintiff EchoStar Technologies L.L.C. is a Texas limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

3. Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

1

4. Defendant All Things Digital, Inc. is a Florida corporation with its principal place of business located at 7213 NW 54th St., Miami, FL 33166.

5. Defendant Elliott Rivera is an officer, director, and owner of All Things Digital, Inc. Rivera resides at 5180 SW 159th Ave., Miami, FL 33185. Rivera authorized, controlled, participated in, and received direct financial benefits from the infringing activities of All Things Digital, Inc.

## JURISDICTION AND VENUE

6. This action is predicated upon violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this judicial district, can be found in this judicial district, and a substantial part of the events giving rise to this action occurred in this judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because this case asserts claims relating to the protection of copyrighted materials.

8. This Court has personal jurisdiction over Defendants, who reside in or regularly conduct business within the State of Florida.

## DISH NETWORK SATELLITE TELEVISION PROGRAMMING

9. DISH Network L.L.C. is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

10. DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

11. DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights.

12. The works broadcast by DISH Network are copyrighted. DISH Network has the authority of the copyright holders to protect the works from unauthorized reception and viewing.

13. DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back to Earth where it can be received by DISH Network subscribers that have the necessary equipment.

14. A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the components. EchoStar Technologies L.L.C. provides receivers, dish antenna, and other digital equipment for the DISH Network system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar LLC.

15. Each EchoStar Technologies receiver and NagraStar smart card is assigned a unique serial number that is used by DISH Network when activating the equipment and to ensure

the equipment only decrypts programming the customer is authorized to receive as part of his subscription package and pay-per-view purchases.

16.     The NagraStar conditional access system performs two interrelated functions in the ordinary course of its operation:  first, subscriber rights management, which allows DISH Network to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, protection of control words that descramble DISH Network's satellite signal, which prevents unauthorized reception and viewing of DISH Network programming.

17.     An integral part of NagraStar's conditional access system is a smart card having a secure embedded microprocessor.  The microprocessor contains a ROM segment of memory that provides instructions and commands to the smart card in the everyday operation of the NagraStar security system.  The ROM reads from data contained in the microprocessor's EEPROM memory segment to perform calculation and operation functions.  The EEPROM also stores a special kind of data called decryption keys.

18.     To put the smart card in context, the EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the entitlement control message and forwards it to the smart card.  Provided that the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word.  The control word is transmitted back to the receiver in order to decrypt the DISH Network satellite signal.

19.     Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH Network subscriber.

**PIRACY OF DISH NETWORK PROGRAMMING**

20. Various devices have appeared on the black market over the years for the purpose of illegally decrypting or "pirating" DISH Network programming. The black market in piracy devices represents a multimillion-dollar industry in the United States.

21. Several years ago pirates developed a method to circumvent the DISH Network security system and intercept DISH Network's satellite broadcasts using so-called "free-to-air" or "FTA" receivers ("unauthorized receivers"). Initially, this method of piracy was accomplished by loading software that contains the proprietary data and keys to DISH Network's security system ("piracy software") onto circuit chips in the unauthorized receiver, so as to mimic a legitimate NagraStar smart card.

22. Piracy software is made available for free on various Internet websites, and once downloaded, transferred to an unauthorized receiver through a connection to a home computer or thumb drive. The process of loading piracy software is referred to as "flashing" the receiver and can be completed by even a layperson in a matter of minutes.

23. The downside of the foregoing method of signal theft was that piracy software had to be regularly updated to account for and overcome changes in DISH Network's security system, namely electronic countermeasures transmitted in the satellite stream. These countermeasures have many effects, one being to change the decryption keys required to access proprietary DISH Network control words. As a result, a new form of satellite piracy emerged and goes by several names including "control word sharing," "Internet key sharing," or more simply "IKS."

24. With IKS, once piracy software is loaded onto the unauthorized receiver, the end user connects the receiver to the Internet via its built-in Ethernet port or via an add-on dongle.

The Internet connection serves two piracy-related purposes: first, it automatically updates piracy software on the receiver when the end user responds "yes" to an on-screen menu prompt; and second, the Internet connection contacts a computer server which in turn provides the necessary DISH Network control words.

25.    The computer server, called an "IKS server," has multiple, subscribed NagraStar smart cards connected to it, and thus the ability to provide the control words. Control words are transmitted from the IKS server over the Internet to unauthorized receivers, where they are used to decrypt DISH Network's signal to view programming without paying a subscription fee.

26.    Because IKS is based on the trafficking of control words obtained from genuine, subscribed DISH Network receiving equipment, this method of piracy remains effective even after DISH Network's transition to "Nagra 3," the latest generation security technology recently introduced by NagraStar.

## DEFENDANTS' WRONGFUL CONDUCT[1]

27.    Defendants traffic in several DISH Network piracy devices that are identified below. Defendants purchased many of the piracy devices from a company located in Escondido, California called Sonicview USA, Inc. The relationship between Defendants and Sonicview USA, Inc. was managed by Defendant Rivera.

28.    Rivera is an officer, director, and owner of All Things Digital, Inc. Rivera participated in running the day-to-day operations of All Things Digital, Inc. Rivera made the final decisions regarding the operation of All Things Digital, Inc. Rivera selected the products

---

[1] The allegations made by DISH Network concerning the whereabouts and wrongful conduct of Defendants are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support. Therefore, DISH Network reserves the right to supplement or amend its claims and the basis for those claims, with leave of court if needed, as additional investigation and discovery is conducted.

that were sold by All Things Digital, Inc., set the pricing, and controlled the distribution. Rivera received direct financial benefits from the trafficking of DISH Network piracy devices through All Things Digital, Inc.

29.     "Sonicview" brand unauthorized receivers are among the products distributed by Defendants. Sonicview receivers are capable of circumventing the DISH Network security system and intercepting DISH Network satellite television programming. At one time Sonicview receivers were used to perform the traditional form of unauthorized receiver piracy, and today are being used for IKS.

30.     Sonicview receivers have software and hardware components that are primarily designed and intended for circumventing the NagraStar conditional access system and decrypting DISH Network's satellite signal without authorization. Among those components is proprietary code from a DISH Network access card, a decryption algorithm used in DISH Network's security system, and data supporting a graphical user interface that is used when configuring Sonicview receivers for piracy. Sonicview receivers also contain explicit support for add-on adapters and modules that similarly have no commercial purpose or use other than facilitating DISH Network piracy.

31.     Defendants traffic in an adapter for Sonicview receivers known as the "iHub," "New Link," "SV Lan," or "WizHub" (collectively, the "Sonicview dongle"). The Sonicview dongle enables Sonicview receivers to access an IKS server and obtain control words used to decrypt DISH Network programming without authorization. Defendants supply a "serial number" with the Sonicview dongle, which serves as a passcode to access the IKS server. Sonicview dongles are impractical for performing any legitimate application.

32. Sonicview high-definition receivers are also configured to accommodate an add-on module known generally as an "8PSK module," and more specifically as the "A-1 module." The A-1 module enables Sonicview receivers to pirate DISH Network's high-definition programming, which is broadcast using a unique combination of 8PSK modulation and Turbo forward error correction. The A-1 module has no legitimate application and is primarily designed and used to facilitate piracy of DISH Network's high-definition programming.

33. Defendants directly, or others working at their direction or under their control, test the piracy capabilities of Sonicview receivers, Sonicview dongles, and A-1 modules prior to distribution.

## CLAIMS FOR RELIEF

### COUNT I

**Trafficking in Circumvention Devices and Services in Violation of the
Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)**

34. DISH Network repeats and realleges the allegations in paragraphs 1-33.

35. Defendants were and are engaged in the business of offering to the public, providing, and trafficking in Sonicview receivers, Sonicview dongles, and A-1 modules, in violation of 17 U.S.C. § 1201(a)(2).

36. Defendants' Sonicview receivers, Sonicview dongles, and A-1 modules are primarily designed and produced for the purpose of circumventing the DISH Network security system; have no commercially significant purpose or use other than to circumvent the DISH Network security system; and are marketed by Defendants and others known to be acting in concert for use in circumventing the DISH Network security system.

37. The DISH Network security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works. Defendants' actions that

constitute violations of 17 U.S.C. § 1201(a)(2) were and are performed without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

38. Defendants violated 17 U.S.C. § 1201(a)(2) willfully and for the purpose of commercial advantage and private financial gain.

39. Defendants knew or should have known their actions were and are illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II

### Distributing Signal Theft Devices in Violation of the Communications Act, 47 U.S.C. § 605(e)(4)

40. DISH Network repeats and realleges the allegations in paragraphs 1-33.

41. Defendants were and are engaged in the business of selling or otherwise distributing Sonicview receivers, Sonicview dongles, and A-1 modules in violation of 47 U.S.C. § 605(e)(4).

42. Defendants' Sonicview receivers, Sonicview dongles, and A-1 modules are primarily of assistance in the unauthorized decryption of DISH Network's satellite transmissions of television programming.

43. Defendants violated 47 U.S.C. § 605(e)(4) willfully and for the purpose of commercial advantage and private financial gain.

44. Defendants intended for their Sonicview receivers, Sonicview dongles, and A-1 modules to be used in the unauthorized decryption of DISH Network's satellite transmissions of television programming, or knew or should have known the devices were and are primarily used

for this purpose, and therefore are illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## COUNT III

### Intercepting and Procuring Others to Intercept Satellite Signals in Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520

45. DISH Network repeats and realleges the allegations in paragraphs 1-33.

46. Defendants were and are intercepting and procuring others to intercept DISH Network's satellite transmissions of television programming in violation of 18 U.S.C. §§ 2511(1)(a) and 2520.

47. Defendants test Sonicview receivers, Sonicview dongles, and A-1 modules prior to distribution by using the devices to intercept DISH Network's satellite transmissions of television programming. Defendants' distribution of these devices causes others to intercept DISH Network programming.

48. Defendants violated 18 U.S.C. §§ 2511(1)(a) and 2520 for tortious and illegal purposes, and for commercial advantage and private financial gain.

49. Defendants' interception and procurement of others to intercept was intentional, and therefore is illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(a) and 2520.

## PRAYER FOR RELIEF

WHEREFORE, DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC seek judgment against Defendants as follows:

A. For a grant of permanent injunctive relief restraining and enjoining Defendants, and their employees, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, from:

(1) manufacturing, importing, offering to the public, providing, or otherwise trafficking in Sonicview receivers, Sonicview dongles, A-1 modules, IKS server passcodes, or any other technology, component, or part thereof that:

(a) is primarily designed or produced for circumventing the DISH Network security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

(b) has only a limited commercially significant purpose or use other than to circumvent the DISH Network security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform; or

(c) is marketed for use in circumventing DISH Network's security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

(2) manufacturing, assembling, modifying, importing, exporting, selling, or otherwise distributing Sonicview receivers, Sonicview dongles, A-1 modules, IKS server passcodes, or any other device knowing or having reason to know that such device is primarily of assistance in the unauthorized decryption of direct-to-home satellite services;

(3) receiving or assisting others in receiving without authorization, or otherwise intercepting or procuring others to intercept, DISH Network's satellite transmissions of television programming;

B. For an order impounding all Sonicview receivers, Sonicview dongles, A-1 modules, IKS server passcodes, and any other technologies, components, or parts thereof in the custody or control of Defendants that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, or the Communications Act, 47 U.S.C. § 605;

C. For an order directing Defendants to preserve all records, in any form including electronic form, that evidence, refer, or relate to Sonicview receivers, Sonicview dongles, A-1 modules, IKS server passcodes or other devices used in satellite television piracy, including any manufacturers, exporters, importers, dealers, or purchasers of such devices, or persons involved in operating an IKS server or receiving control words from same;

D. Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201(a)(2), under 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

E. Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), under 47 U.S.C. § 605(e)(3)(C)(i);

F. Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in

the amount of $100 per day for each violation of 18 U.S.C. § 2511(1)(a) or $10,000, under 18 U.S.C. § 2520(c)(2);

G. Award DISH Network punitive damages under 18 U.S.C. § 2520(b)(2);

H. For an award of DISH Network's costs, reasonable attorneys' fees, and investigative expenses under 17 U.S.C. § 1203(b)(4)-(5), 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

I. For a full and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct described herein;

J. For pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law;

K. For such additional relief as the Court deems just and equitable.

DATED: July 5, 2012                                              Respectfully submitted,


  s/ James A. Boatman, Jr.
James A. Boatman, Jr.
jab@boatman-law.com
Florida Bar No. 0130184
**THE BOATMAN LAW FIRM PA**
3021 Airport-Pulling Road North, Suite 202
Naples, FL 34105
Telephone: (239) 330-1494
Facsimile: (239) 236-0376

Chad M. Hagan (*pro hac vice* to be filed)
chad.hagan@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Attorneys for Plaintiffs